# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RENEW ENERGY LLC, | ) | Case No. 09-10491 |
| | ) | |
| Debtor. | ) | Hon. Robert D. Martin |

## APPLICATION OF DEBTOR RENEW ENERGY LLC FOR AN ORDER UNDER 11 U.S.C. §§ 327 AND 328(A) AUTHORIZING THE RETENTION AND EMPLOYMENT OF WILLIAM BLAIR & COMPANY, L.L.C. AS FINANCIAL ADVISOR AND INVESTMENT BANKER

Renew Energy LLC, debtor and debtor in possession herein ("Debtor"), hereby requests entry of an order under 11 U.S.C. §§ 327 and 328(a), in the form filed in connection with this Application, authorizing Debtor to retain and employ the firm of William Blair & Company, L.L.C. ("Blair") as its financial advisor and investment banker in this chapter 11 case, effective as of the Petition Date (as defined below). In support of this Application, Debtor submits the Declaration of Geoffrey A. Richards, the Co-Group Head of Special Situations & Restructuring at Blair (the "Richards Declaration"), which is attached hereto as Exhibit A and is incorporated herein by reference. In further support, Debtor states:

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334 and the general order of reference of the United States District Court for the Western District of Wisconsin.

2. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

4. The statutory bases for the relief requested herein are 11 U.S.C. §§327 and 328(a) and Rule 2014 of the Federal Rules of Bankruptcy Procedure ("FRBP").

## BACKGROUND

5. On January 30, 2009 ("Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§101 *et seq.* (the "Code").

6. Debtor continues to operate its business and manage its property as a debtor in possession pursuant to §§1107 and 1108 of the Code.

7. On February 11, 2009, the United States Trustee appointed a statutory committee of unsecured creditors in Debtor's case (the "Committee").

8. No trustee or examiner has been appointed in this case.

9. Debtor is a privately owned Wisconsin limited liability company, having five (5) individual members, each of whom owns twenty percent (20%) of the membership interests in Debtor. The address of Debtor's principal place of business is N5355 Junction Road, Jefferson, Wisconsin 53549.

10. Debtor owns and operates a dry corn fractionation process ethanol plant (the "Plant") in Aztalan, Wisconsin. The Plant has a production capacity of 110 million gallons of ethanol per year. In addition to ethanol, the Plant produces high-protein distillers' dry grains (a high-grade animal feed), corn bran with solubles, beverage-grade carbon dioxide, and other corn-derived byproducts, all of which it markets on a worldwide basis. Debtor's entire business consists of selling products produced by the Plant; Debtor employs approximately 80 people in salaried and hourly positions.

## Relief Requested

11. By this Application, the Debtor requests that the Court enter an order authorizing it to employ and retain William Blair & Company LLC as its financial advisor and investment banker. The terms of Debtor's retention of Blair are set forth in the engagement letter by and between Debtor and Blair, dated January 23, 2009, as amended by the First Amendment thereto dated February 13, 2009 (together, the "Engagement Letter"), a copy of which is attached hereto as Exhibit B.

## Services to Be Provided By Blair

12. Debtor desires to retain Blair because of Blair's extensive experience in providing similar services to financially distressed companies in complex financial restructurings both in chapter 11 bankruptcy cases and in non-bankruptcy contexts. The Debtor anticipates that Blair will render services and advice to Debtor as needed throughout the course of this chapter 11 case; in particular, it is anticipated that Blair will provide services to Debtor that include, but are not necessarily limited to, the following (the defined terms of clauses (a), (b), and (c), collectively, the "Possible Transactions")[1]:

    (a) attempt to obtain, and advise Debtor concerning, financing for Debtor, whether secured or unsecured, subordinated or senior debt, equity, or equity equivalents, and whether arranged on a private or public basis, including, without limitation, postpetition debtor-in-possession financing (as more fully described in the Engagement Letter, a "Financing Transaction");

    (b) lead efforts to, and advise Debtor concerning, the marketing and sale of all or a substantial portion of its assets, equity interests, and/or indebtedness, whether in a single or multiple transactions, including providing valuation advice and analysis, making presentations to the Debtor's board of directors, creditors' groups, and other

---

[1] The following is meant as a summary of the services to be provided by Blair and the compensation structure proposed in connection with Blair's retention; it is qualified in all respects by the terms of the Engagement Letter, and, in the event of any inconsistency between the summaries contained in this Application and the terms of the Engagement Letter, the terms of the Engagement Letter shall control. Unless otherwise defined herein, capitalized terms used by not defined in this Application shall have the meanings ascribed to them in the Engagement Letter.

constituencies, as necessary (as more fully described in the Engagement Letter, an "M&A Transaction");

  (c)  advise and assist Debtor in effecting one or more transactions that materially reduce Debtor's secured obligations to Bankers' Bank and to U.S. Bank, National Association, as indenture trustee in connection with those certain Subordinated Fixed Rate Exempt Facility Revenue Bonds, Series 2007, issued in the principal amount of $38 million by the Town of Aztalan, Wisconsin, for the benefit of Debtor (as more fully described in the Engagement Letter, a "Restructuring Transaction"); and

  (d)  providing testimony in Court proceedings in connection with the services provided to Debtor.

13.  Debtor believes that Blair is well qualified to perform these services in this chapter 11 case.

**Compensation Structure For Blair**

14.  The terms of Blair's compensation (the "Compensation Structure") are set forth at pages 3-6 of the Engagement Letter. In summary, the Compensation Structure is as follows:

  (a)  Debtor shall pay Blair a fully-earned, non-refundable fee of $50,000 per month, in advance, on the date the Engagement Letter was executed and every thirty days thereafter, which amount shall be credited against and shall reduce any Transaction Fee (as described in clause (b) below) owed to Blair under the Engagement Letter.

  (b)  Upon the consummation of an M&A Transaction, Financing Transaction, or Restructuring Transaction, Blair would be entitled to a fee equal to the greater of (i) $900,000 (the "Minimum Fee") and (ii) (A) between 2.5% and 4.0% of the total Transaction Value (for an M&A Transaction) (as calculated pursuant to the Engagement Letter); (B) percentages of certain amounts raised or committed (for a Financing Transaction), and (C) 1.5% of the principal amount of the debt facilities restructured (for a Restructuring Transactions), provided, however, that such fee for a Restructuring Transaction shall be reduced by 50% in the event the Restructuring Transaction is effected in conjunction with an M&A Transaction or a Financing Transaction. Blair will be entitled to more than one such fee if more than one Possible Transaction takes place, but Blair will not be entitled to more than one fee for a single Possible Transaction, merely because such Possible Transaction may be a combination of an M&A Transaction, a Restructuring Transaction, and/or a Financing Transaction.

  As described more fully in the Engagement Letter (specifically, the First Amendment), Blair will receive a fee in the amount of $75,000 in connection with the debtor-in-possession financing approved by the Court on an interim basis on February 2, 2009, and a fee of 3% of the principal amount of any additional debtor-in-possession

- 4 -

financing raised or committed to by West Pointe Bank or Bankers' Bank. Such fees shall be credited against fees due for "Third Party DIP Financing" (as defined in the First Amendment).

(c) Debtor will reimburse Blair for all of its reasonable out-of-pocket expenses (as set forth more fully at pages 5-6 of the Engagement Letter) incurred by Blair in connection with its engagement for the Debtor, whether or not any of the Possible Transactions described above is effected.

**Approval of Compensation Structure under Code §328(a)**

15. Code §328(a) provides, in relevant part (emphasis added):

The trustee . . . , with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of [the Code,] on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on *a fixed or percentage fee basis*, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

16. Debtor believes that the overall Compensation Structure described above is comparable to compensation generally charged by financial advisors and investment bankers of similar stature and experience for comparable engagements, both in and out of bankruptcy court. Blair's industry and restructuring expertise, its knowledge of capital markets, and its financing skills and capabilities in the areas of mergers and acquisitions were important factors in determining the Compensation Structure.

17. Because of Blair's expertise, its commitment of resources to Debtor's engagement to the exclusion of other possible employment, and the time Debtor anticipates Blair will devote to this engagement, Debtor asks that the Court approve the Compensation Structure under Code §328(a) and that the Court evaluate Blair's final compensation and reimbursement of expenses in this case under the standards of Code §328(a), rather than under those of Code §330. For those same reasons, Blair has requested that Blair not be required to keep time records in connection

with its engagement by Debtor.  Blair has represented to Debtor, however, that it will file interim and final fee applications in compliance with applicable provisions of the Code, the FRBP, the local rules of this Court, and pursuant to any additional procedures that may be established by the Court in this case and has agreed that it will not seek compensation or reimbursement of expenses from Debtor or its estate in excess of amounts ultimately allowed by the Court under Code §328(a).

**<u>Indemnification</u>**

18. In conjunction with the Engagement Letter, Debtor and Blair entered into an indemnification agreement (the "Indemnification") (which is attached to the Engagement Letter as Exhibit A thereto; the term "Engagement Letter" as used in this Application includes the Indemnification).

19. In summary (which summary is qualified in all respects by the terms of the Indemnification), Debtor has agreed to indemnify (i) Blair; (ii) the members, principals, partners, directors, officers, agents and employees and counsel of Blair and its affiliates; (iii) any other person controlling Blair or its affiliates; and (iv) the successors, assigns, heirs, and personal representatives of any of the foregoing (the entities described in the preceding clauses (ii) though (iv), collectively, the "Other Indemnified Parties"), from and against any and all Losses and Expenses (each as defined in the Indemnification) related to the services contemplated to be provided by Blair under the Engagement Letter.

20. Pursuant to the Indemnification, Debtor does *not* indemnify Blair for Losses or Expenses which are finally judicially determined to have resulted primarily and directly from the gross negligence or bad faith of Blair or the Other Indemnified Parties in performing the services that are the subject of the Engagement Letter.

**Disinterestedness**

21. To the best of the Debtor's knowledge, information, and belief, and based upon representations made to it by Blair and upon the Richards Declaration, Blair has no connection with Debtor, its creditors, the Assistant United States Trustee for Region 11 resident in Madison, Wisconsin, her counsel, or any person employed in her office, or any other party in interest in this chapter 11 case or their respective attorneys or accountants, except as set forth below and in the Richards Declaration:

    (a) Blair does not represent any entity, other than Debtor, in matters related to this chapter 11 case.

    (b) Prior to the Petition Date, Blair received **a** $50,000 monthly fee. Debtor does not owe Blair any amounts prepetition.

    (c) Blair may represent or may have represented certain creditors of the Debtor or other interested parties in matters unrelated to this chapter 11 case and may continue those representations in the future. As set forth below, however, Blair has undertaken a search to determine and to disclose, whether it currently represents any significant creditors or insiders in such unrelated matters.

22. In connection with its proposed retention by the Debtor in this case, Blair researched its client database to determine whether it has any relationships with the following entities:

    (a) the Debtor;

    (b) Debtor's members, officers, and directors;

    (c) Debtor's prepetition and postpetition secured creditors;

    (d) the entities holding the 25 largest unsecured claims against Debtor as set forth in the list filed by Debtor pursuant to FRBP 1007; and

- 7 -

QB\7383220.2

    (e)  Quarles & Brady LLP, proposed counsel for Debtor and Debtor in Possession.

To the extent that such research indicated that Blair has represented or currently represents any of the foregoing entities in matters unrelated to this chapter 11 case, the identities of such entities are set forth in the Richards Declaration.

  23.  Blair makes the following additional disclosures with respect to its representations:

    (a)  Richard Feinstein, analyst at Blair, is the son of Faye Feinstein, a partner at Quarles & Brady, bankruptcy counsel to the Debtor; and

    (b)  William Blair has conducted institutional municipal securities business with Cargill unrelated to this case.

  24.  To the best of the Debtor's knowledge, information, and belief, and based on representations made to it by Blair and upon the Richards Declaration and as set forth above, Debtor believes that Blair is a "disinterested person" as defined in Code §101(14).

  25.  Debtor requests that Blair be retained and employed retroactive to the Petition Date. The press of urgent matters requiring attention in the early weeks of Debtor's case prevented this application from being filed sooner. Also, FRBP 6003(a) would likely have prevented the Court, in any event, from entering an order authorizing Blair's retention and employment during the initial days of this case. No party will be prejudiced by the retention of Blair retroactive to the Petition Date.

## Notice

  26.  Notice of this Motion will be provided electronically via the Court's CM/ECF System, or otherwise via electronic mail, to (a) counsel for (i) the Committee; (ii) Bankers' Bank, Debtors' prepetition senior secured lender; (iii) U.S. Bank, National Association, as Indenture Trustee; (iv) West Pointe Bank, Debtor's postpetition secured lender, and (v) the United States

- 8 -

QB\7383220.2

Trustee, and (b) other parties, or their counsel, who have filed a notice of appearance through the Court's CM/ECF System. If the Committee has not appeared through counsel at the time this Motion is filed and served, Debtor will provide notice of this Motion by electronic mail or facsimile transmission to the Committee's members. Given the nature of the relief requested herein, Debtor submits that no other notice is necessary and asks the Court, pursuant to Fed. R. Bankr. P. 9006(c)(1) and 9007, to approve the same.

WHEREFORE, Debtor Renew Energy LLC respectfully asks the Court to enter an order (A) authorizing the Debtor to retain and employ William Blair & Company LLC as its financial advisor and investment banker, pursuant to Code §§327 and 328(a) (rather than Code §330); (B) approving the Compensation Structure under Code §328(a), and (C) granting such other and further relief as the Court may deem appropriate.

DATED: February 13, 2009        QUARLES & BRADY LLP

                                By:   /s/ Christopher Combest
                                      Thomas J. Magill (IL ARDC No. 01731009)
                                      Christopher Combest
                                        (IL ARDC No. 06224701)
                                      500 West Madison Street, Suite 3700
                                      Chicago, IL 60661
                                      Telephone: (312) 715-5000
                                      Facsimile:  (312) 715-5155

                                *Proposed Counsel for Debtor and Debtor in Possession*